## Parole Violators

LAWLEY, JR., Assistant Deputy Attorney General, August 27, 1952.—Formal Opinion No. 628, dated April 18, 1952, is hereby recalled.

We have before us your request for advice concerning the application of section 21.1 of the Parole Law of August 6, 1941, P. L. 861, as added by the Act of August 24, 1951, P. L. 1401, sec. 5, 61 PS §331.21(a).

The new section relates to the recommitment and detention of parole violators, and in this regard you ask:

1. Does the section in question apply to persons sentenced, paroled, absconded and recommitted prior to the effective date of the act?

2. Does the section in question apply to persons sentenced, paroled and absconded, but not yet recommitted prior to the effective date of the act?

3. Does the section in question apply to persons sentenced, paroled, but not yet in abscondment, but who may abscond at some future time prior to the expiration of the maximum sentence?

4. Does the section in question apply to inmates now incarcerated who were sentenced prior to the effective date of the act?

Subsection (a) of section 21.1, relating to convicted violators makes no change in prior practice followed by the board. Consequently, there will be no problem as to the time of application of this subsection and it need not be discussed further.[1]

Subsection (b) of section 21.1, relating to technical violators changes existing law. Originally the Board of Parole, in the case of a technical parole violation, would, upon the parolee's arrest, compel him to make up the entire period of his delinquency on parole, even though such action might cause the inmate to be detained beyond the expiration date of his maximum sentence as originally computed. In the case of Commonwealth ex rel. Tate v. Burke, 364 Pa. 179 (1950), this practice was held to be improper because section 14 of the Act of June 19, 1911, P. L. 1055, as amended, 61 PS §§309 and 310, required that delinquent time for technical violation be computed from the date of the parolee's arrest for such technical violation. Consequently, if he was not arrested until after the expiration of his maximum sentence as originally computed, even though he had been delinquent for the

---

[1] The Department of Justice ruled in Formal Opinion No. 449, dated February 26, 1943, that the board had the power to reparole a convicted violator. This ruling was incorporated in the statutory law by the Act of 1951, supra. Since the board could reparole immediately, the mandatory recommitment required by the Act of June 19, 1911, P. L. 1055, as amended, 61 PS §305, became a useless and sometimes costly proceeding, and subsection (a) of section 21.1 now places it within the discretion of the board whether or not the return of a convicted violator will be ordered.

entire period of his parole, he could not be recommitted at all. In other words, the longer he eluded arrest following delinquency, the shorter the time he would have to serve upon recommitment.

This situation was remedied by subsection (*b*) of section 21.1, as added by the Act of August 24, 1951, supra, which reads as follows:

"Technical violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution in the Commonwealth who during the period of parole violates the terms and conditions of his parole other than by the commission of a new crime of which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolle contendere in a court of record may be recommitted after hearing before the board to the institution from which he was paroled or to any other institution to which legally transferred as a parole violator. If he is so recommitted he shall be given credit for the time served on parole in good standing but with no credit for delinquent time and may be reentered to serve the remainder of his original sentence or sentences. Said remainder shall be computed by the board from the time his delinquent conduct occurred for the unexpired period of the maximum sentence imposed by the court without credit for the period the parolee was delinquent on parole and he shall be required to serve such remainder so computed from the date he is taken into custody on the warrant of the board. Such prisoner shall be subject to reparole by the board whenever in its opinion the best interests of the prisoner justify or require his being reparoled and it does not appear that the interests of the Commonwealth will be injured thereby."

This provision has the effect of enacting into law the practice followed by the Board of Parole prior to the Tate decision.

The first question to be determined is whether or not section 21.1(*b*) shall apply where all of the operative facts have taken place prior to the effective date of the act, viz., August 24, 1951.

Section 56 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §556, provides:

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature."

The amendment is a grant of authority to the Board of Parole to order certain recommitments and to compute a parolee's back time in a certain manner. The date of recommitment is the determinative factor. Where it has been made prior to August 24, 1951, section 21.1(*b*) can have no application, since to so apply it would violate the prohibition against retroactive legislation.

The second question is what application does the section have where some, but not all, of the operative facts have taken place before the effective date of the act? In other words, when a man is released on parole does he acquire a vested right in the status of the law at that time?

In the case of United States ex rel. Forino v. Garfinkel, 166 F. (2d) 887 (3rd cir., 1948), the facts were that the General Assembly had repealed the Act of March 31, 1860, P. L. 382, which provided that the completion of the service of a sentence imposed for certain crimes would have the effect of an executive pardon. The relator argued that the repeal could not be effective as to him, but the court answered this contention in the following language at page 889:

". . . Under that law, as indeed under that of the other States and of the United States, a pardon is simply an act of grace. . . . This is true whether the pardon be granted by the executive or by the legislature. No one has or can acquire a vested right to a pardon. If the pardon be from the executive, it is

by the will of the executive; if it be legislative, it is granted only under the terms of the applicable statute."

The fact that a pardon rather than a parole was there involved would seem to be immaterial.

Even if it is assumed that the parolee does acquire a right in existing law, retrospective laws are nevertheless constitutional unless they impair contractual obligations or are ex post facto: Lane et al. v. Nelson, 79 Pa. 407 (1875). It is true that a parole is often spoken of as a conditional release requiring the recommitment of the parolee if he violates the conditions thereof: Commonwealth ex rel. Wall v. Smith et al., 345 Pa. 512 (1942). This gives a parole some semblance of a contract, but, in fact, it is not, if for no other reason, because there is no consideration involved. On the contrary, a parole is an act of grace and mercy.[2]

In Commonwealth ex rel. Banks v. Cain, 345 Pa. 581 (1942), relator raised the objection that a change in the parole law makes it ex post facto. The court said at page 588:

"The exercise of the power of parole being but an administrative function which does not impinge upon the judicial power of sentencing the accused in conformity with the law, it follows that the present act may constitutionally be applied to cases where sentences were imposed before its effective date. . . ."

There is no Pennsylvania case directly in point, but in answer to the precise question as to the effect a change in the parole laws would have on one already on parole, California has decided in the case of in re Etie, 167 P. 2d 203, 207 (Cal. 1946) that:

---

[2] Commonwealth ex rel. Tate v. Burke, supra; Commonwealth ex rel. Carmelo v. Smith, 347 Pa. 495 (1943).

". . . The petitioner had no constitutional guarantee against a change in the law relating to punishment for future offenses or violations of parole. *His rights under the facts were determined by the law in force at the time he committed the violation of his parole. . . .*" (Italics supplied).

This is a sound rule which should be applied to the situation at hand. Delinquency resulting from abscondment is a continuing violation. From August 24, 1951, on, each day in abscondment is a new violation. Thus, where a parolee absconded and became delinquent prior to the effective date of the Act of 1951, supra, and avoided arrest until sometime after its effective date, he should be given no credit for delinquent time for the period between the effective date of the act and his recommitment, but he must be given credit for the period between the date he became delinquent and the effective date of the act. While the parolee has no vested right in the existing law, and the Act of 1951, supra, will apply from August 24, 1951, the Tate decision controls prior to that date since, as has already been pointed out, an act cannot be construed to have a retroactive effect.

We are therefore, of the opinion, and you are accordingly advised that:

1. Section 21.1(*b*) of the Act of August 6, 1941, P. L. 861, as added by the Act of August 24, 1951, P. L. 1401, sec. 5, 61 PS §331.21(*a*), does not apply to a person who has been sentenced, paroled, absconded and recommitted prior to the effective date of the act.

2. The section does apply to a person sentenced, paroled and absconded, but not yet recommitted prior to the effective date of the act, provided the delinquency continued after the effective date, but in computing the back time its application is limited to the delinquency occurring after August 24, 1951.

3. The section does apply to a person sentenced, paroled, but not yet in abscondment prior to the effective date of the act.

4. The section does apply to an inmate sentenced, but not yet paroled prior to the effective date of the act.