Commonwealth *v.* Wood et al., Appellants.

Argued October 22, 1940.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*J. A. Welsh,* for appellants.

*Robert M. Fortney,* District Attorney, for appellee.

OPINION BY PARKER, J., November 20, 1940:

Eugene Wood and Emerson Eugene Fisher were jointly indicted and tried on an indictment charging in two counts robbery and robbery with aggravating circumstances. They were convicted on the second count and each has appealed to this court. The cases were argued together, they involve the same questions and they will be disposed of in one opinion.

On April 9, 1939, three persons, armed with a sawed off shot gun and two revolvers, entered premises of Samuel Morris in the Borough of Mt. Carmel, Northumberland County, and forcibly took from the persons who were present money and other personal property. James Wilson, who was known to and was identified by some of the victims, was apprehended and indicted. He plead guilty, was sentenced to the Eastern Penitentiary and died shortly thereafter. He made a written confession implicating Wood and a third party. Wood was apprehended and he implicated Fisher.

On the trial several of the victims identified Wood and Fisher as participants with arms in the robbery. The Commonwealth also offered in evidence separate written confessions signed by Wood and Fisher in which they described the robbery, the plans for its execution and their movements in connection therewith. The appellants now allege trial errors in the admission of testimony and in the charge to the jury. We are all of the opinion that the judgments should be affirmed.

The appellants complain of the admission in evidence of the signed confessions of the respective defendants, arguing that they should not have been received as

they referred to crimes alleged to have been committed by one of the confessors at a former time and to other irrelevant matters, and that even if the writings were admissible the trial judge failed in his duty to instruct the jury that such confessions were only to be taken as evidence against the one making the same.

Each of these appellants executed a signed confession in the presence of a number of state policemen, the one made by Wood being dated August 1, 1939, and that by Fisher on the following day. After the preparation and execution of these papers, the appellants were taken before a justice of the peace where each swore to his confession. In addition, one of the officers testified as follows: "A. We read Fisher's statement in front of Wood, and Wood's statement in front of Fisher at that time, and they both admitted that they were right. They were then taken to the office of Squire Zecoski at Mt. Carmel, and they were sworn to up there on the evening of August 2, 1939." Similar testimony was given by the justice of the peace. It is therefore clear that the testimony which the jury accepted showed that each of the appellants assented to the accuracy of the statement of the other. Each of the confessions therefore became competent evidence not only against the individual making the confession but also against the one who assented to its accuracy.

Neither do we find any merit in the contention that the confession of Fisher should not have been received because it contained a reference to the commission of another crime and to other alleged irrelevant matters. Fisher, in the course of reciting the movements of the three robbers from Williamsport, Pennsylvania, to the scene of the robbery and their escape, set forth: "While we were riding around Wood and Wilson told me that they had broken into a cottage on the road from Montoursville to Barber. This cottage belongs to Bob Gilmore, President of the Wire Rope Company, Muncy,

Penna. He lives at Muncy. When they broke into this cabin they thought they would find some guns but they didn't find any ...... On the way from Mt. Carmel to Muncy, Wood said 'We'll get Ward and the three of us making four we will knock the Watsontown Bank (Watsontown, Penna.) He said we'll knock off the bank at noon some day because there was only one man on duty at that time. He said there would be between $10,000 and $15,000 there. He said that we would pull this job sometime within the next two weeks.' ...... During the time I was in the car with Wood and Wilson, Wood said 'We ought to have some Giggle Weed, I imagine that he meant Marihuana.' I believe the Doeblers, the family with whom Wood lives with all use Marihuana."

"As a general rule, at common law, on a prosecution for a particular crime, a distinct crime unconnected with that laid in the indictment cannot be given in evidence against a prisoner as substantive proof of the crime for which he is being tried": *Com. v. Williams*, 307 Pa. 134, 147, 160 A. 602. However, the Supreme Court has more than once held "that if a voluntary confession is made to police officers, the whole is admissible in evidence, even though it may contain admissions of other offenses unrelated to the one for the commission of which the defendant is on trial": *Com. v. Gable*, 323 Pa. 449, 452, 187 A. 393. Also see *Com. v. Weston,* 297 Pa. 382, 147 A. 79; *Com. v. Dague*, 302 Pa. 13, 152 A. 839. There are also other exceptions to the general rule not pertinent here: *Com. v. Parker*, 294 Pa. 144, 150, 143 A. 904. In addition, most of the matters objected to were part of the details of what occurred when the two appellants were together on the way to the scene of the crime. They were not matters entirely dissociated with the crime charged but were part of the picture of a general plan and were closely related in time to the offenses charged in the

indictment. The reference to marihuana had the same pertinence as the statement relating to the procuring of the arms used in the perpetration of the crime.

The second assignment of error relates to the refusal of defendants' motion for the withdrawal of a juror and continuance of the case on account of a certain question asked by the district attorney on cross-examination of Carolyn Doebler, a witness called by the defendants. That testimony was as follows: "Q. Did you know he was in jail in Laporte? A. Yes. Mr. Welsh: If the Court please, I object to that question and I ask for the— The Witness: He was in jail for an accidental shooting. Mr. Welsh: Wait a minute. I ask for the withdrawal of a juror and the continuance of the case. The Court: Request refused. Mr. Welsh: Your Honor will note me an exception? The Court: Exception."

An examination of the context will demonstrate that there is no merit in this assignment. Mrs. Doebler was called in an attempt to establish an alibi for Wood. She testified that he made his home with her much of the time, that she acted as a mother to him and that she visited him frequently at a camp where he was doing some repair work on buildings at a time when she knew he was wanted by the police for questioning. It also appeared from the confession that it was a car belonging to this witness which was used in getting from Williamsport to the scene of the crime and in escaping therefrom and that she was in touch with Wood during the time that the officers were trying to apprehend him. In short, her credibility was in question. Under the circumstances the court very properly allowed the district attorney much latitude in examining her for the purpose of affecting her credibility and showing her interest in the case. She was being questioned as to how she happened to be at the camp at about the time Wood was arrested. She stated that all she could learn about the crime was that Wood was in jail at Laporte where he was taken by the

state police. Evidently, and very properly so, the district attorney was of the opinion that she knew much more about the whole affair than she would admit, so he asked her if she knew he was in jail in Laporte. Objection was made to the question and answer and before the court could rule on the objection the witness volunteered the answer that he was in jail for an accidental shooting. The reply was not responsive to the question asked and evidently referred to a different incarceration. This negatives any suggestion that the district attorney was attempting to accuse Wood of a different and specific crime committed at another time. In any event, the reply did not prejudice Wood's case. The cross-examination in general was relevant and proper for the purpose of testing the credibility of the witness: *Com. v. Beck,* 122 Pa. Superior Ct. 123, 129, 184 A. 761.

We have examined the charge of the court with particular reference to the matters complained of by the appellants and find no evidence of reversible error. No requests were made for further or more specific instructions and the charge fairly presented to the jury the issue and the applicable principles of law. The defendants cannot complain of the inadequacy of the charge without showing that the alleged omissions contributed to the jury's verdict to the defendants' prejudice: *Com. v. Becker,* 326 Pa. 105, 191 A. 351.

We have examined all the assignments of error and find no ground for complaint on the part of the appellants. We feel that they had a fair and impartial trial and that the verdict was based upon not only substantial but clear and convincing evidence.

The judgments are affirmed.